[Cite as *Gomez v. Noble Cty. Children Servs.*, 2010-Ohio-1538.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JOHN PAUL GOMEZ, et al., | ) | |
| | ) | CASE NO. 09 NO 361 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| NOBLE COUNTY CHILDREN | ) | |
| SERVICES, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
                                 Court, Case No. 2008-0021.


JUDGMENT:                        Affirmed in Part, Reversed in Part
                                 and Remanded.


APPEARANCES:
For Plaintiffs-Appellants:       John Paul Gomez, Pro-se
                                 318 Moon Clinton Road
                                 Unit A-10
                                 Moon Township, OH  15105


For Defendants-Appellees:        Attorney Randall Lambert
                                 215 South Fourth Street
                                 Ironton, OH  45638


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


                                 Dated:  March 31, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Pro-se Appellants, John Paul Gomez, with his children, N.G. and E.G., appeal the March 23, 2009 decision of the Noble County Court of Common Pleas which dismissed Gomez's complaint pursuant to the Civ.R. 12(B)(6) motion filed by Appellees, Noble County Children Services, Noble County Commissioners, Noble County and various employees.

{¶2} Gomez argues on appeal that the trial court erroneously dismissed his complaint because Gomez adequately pleaded failure to report child abuse and the commission of malicious, reckless or wanton acts during the investigation of Gomez's child abuse allegation under R.C. 2151.421, and violation of Gomez's Fourth and Fourteenth Amendment rights under Section 1983, Title 42, U.S. Code. Gomez further contends that he adequately indicated all actors' exemption from liability immunity under R.C. 2744.01 et seq.

{¶3} Gomez's claims against the government entities, as well as his claims pursuant to Section 1983, are not actionable in this case. However, because the individual employees of a government subdivision could possibly be held liable for the alleged injury to Gomez's children after acting in a malicious, reckless or wanton manner during the investigation of Gomez's child abuse allegation, Gomez's pleadings were sufficient on that particular claim. Accordingly, the trial court's decision should be affirmed in part, reversed in part, and remanded for further proceedings.

### Facts and Procedural History

{¶4} On January 25, 2008, Gomez filed a complaint naming Noble County Children's Services, its employees Donna Boyd and Kelly Clark, and Noble County Commissioners, John Carter, Charles Cowgill, and Virgil Thompson all as defendants. Gomez's original complaint states that Appellees failed to report his daughter as an abused child, and failed to perform their duties as mandated by law.

{¶5} According to the complaint, Gomez requested a civil protection order on June 26, 2006 against Timothy Dyer, the boyfriend of the mother of Gomez's children,

after Gomez witnessed his daughter mimicking sexual acts. The request was denied, but Children Services was assigned to conduct an investigation. On July 14, 2007, Gomez noticed belt prints on his daughter's back, brought her to the hospital, and reported the physical abuse to Children Services. At some date unspecified in the complaint, Children Services concluded that the report of abuse was unsubstantiated. At some later unspecified date, Judge Nau limited Gomez's visitation rights to his children.

{¶6} According to the docket, none of the Appellees filed an answer to Gomez's complaint. On March 7, 2008, Appellees filed a Civ.R. 12(B)(6) motion to dismiss, arguing that Gomez failed to state any claim that would qualify as an exception to Appellees' general immunity from liability as a political subdivision. On May 2, 2008, Gomez filed a request for leave to file an amended complaint.

{¶7} Gomez sought to have Judge Nau disqualified from his case. Gomez filed an affidavit of disqualification with the Ohio Supreme Court, which Chief Justice Moyer denied on February 8, 2008. However, Judge Nau voluntarily recused himself from the case on March 13, 2008.

{¶8} On May 12, 2008 the trial court held a hearing on Appellees' motion to dismiss. The parties conceded that Children Services was performing a governmental function. Gomez conceded that his complaint did not specifically address any of the employees of the Noble County Commissioners that were individually named in his complaint. The trial court orally granted leave for Gomez to amend his complaint.

{¶9} On May 13, 2008, Gomez filed a motion requesting that the trial court issue findings of fact and conclusions of law at the point when it would enter judgment on the motion to dismiss. On May 16, 2008, the trial court ordered both parties to submit proposed findings of fact and conclusions of law. Neither party did so at any point in the proceedings below.

{¶10} Gomez filed an amended complaint on May 27, 2008, adding Noble County, Mindy Harding and Kristine Shoeppner, employees of Children Services, as additional defendants. Gomez also alleged that the Defendants acted in a malicious, reckless or wanton manner during the performance of their statutory duty to investigate reports of

child abuse, that the Defendants violated the Plaintiffs' Fourth and Fourteenth Amendment rights, and that the children continued to be abused up to the present date. On June 16, 2008, Children Services filed an answer to the amended complaint. Included in its answer was a renewed claim that the amended complaint failed to state a claim upon which relief could be granted. As an additional defense, Children Services stated that no exceptions to immunity from liability under R.C. 2744.02 or R.C. 2744.03 applied to any of the named defendants.

{¶11} On February 25, 2009, the trial court held another hearing on Gomez's amended complaint and Children Services's motion to dismiss. Counsel presented legal arguments on behalf of Appellees, and Gomez argued pro-se. No sworn testimony was presented regarding the facts of Gomez's claims.

{¶12} On March 23, 2009, the trial court filed a judgment entry granting Appellees' motion, dismissing all outstanding motions by Gomez, and dismissing Gomez's complaint. The trial court found that none of the exceptions to government subdivision immunity from tort liability applied in this case, and concluded that all of the government subdivisions and employees identified in Gomez's amended complaint were immune from liability. The trial court specifically noted that "this action is a result of a claim of child abuse which was investigated by the proper authorities to whom it was directed. Those authorities, in their discretion, determined that the child abuse complaint was unsubstantiated and took no action. This court can find no reason to believe that the employees of Noble County acted outside the scope of their authority or to find any other reason to impose liability upon them." Though the trial court did not address the merits of Gomez's Section 1983 claim, the trial court disposed of the claim by dismissing Gomez's complaint in its entirety.

{¶13} On April 13, 2009, Gomez filed his notice of appeal and a motion for stay of execution. On April 29, 2009, this court denied Gomez's motion to stay.

### Civ.R. 12(B)(6) Dismissal

{¶14} In his sole assignment of error, Gomez asserts:

{¶15} "The trial court erred by failing to construe the factual allegations set forth in plaintiff's complaint as true, and failed to draw all reasonable inferences in light most

favorable to plaintiffs; thus, abused its discretion granting defendants' motion to dismiss contrary to Ohio's Civil Rule 12(B)(6)."

{¶16} Gomez contends that he set forth a cause of action upon which relief could be granted pursuant to R.C. Chapter 2744 and Section 1983, Title 42, U.S. Code. As Appellees point out, R.C. Chapter 2744 does not create a right of action, and only addresses immunity from certain causes of action. However, a fair interpretation of Gomez's argument on appeal is that it addresses the effect of R.C. Chapter 2744 on the cause of action pursuant to a breach of R.C. 2151.421 duties and subsequent injury that Gomez pleaded in the proceedings below.

{¶17} Dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party can prove no set of facts entitling him to the requested relief. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, at ¶13. A Civ.R. 12(B)(6) motion to dismiss is procedural, and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 1992-Ohio-73, 605 N.E.2d 378. In resolving a Civ.R. 12(B)(6) motion to dismiss, a court must confine its review to the allegations contained in the complaint. *Butler v. Jordan*, 92 Ohio St.3d 354, 356, 2001-Ohio-204, 750 N.E.2d 554, fn. 4. Whether a trial court properly granted a motion to dismiss for failure to state a claim presents a question of law and is therefore subject to a de novo review by this Court. *Perrysburg Twp. V. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶5.

{¶18} As an initial matter, although the lion's share of the debate in this appeal is focused on immunity from liability under the Political Subdivision Tort Liability Act, we must first determine whether Gomez has adequately pleaded a tortious act from which the various Appellees may be found liable or immune. This becomes difficult as Gomez, a pro se litigant, makes many incorrect statements of law. However, Ohio is a notice pleading state, and a plaintiff's claim is only required to set forth the operative facts that give fair notice to the defendant of the nature of the action. Civ.R. 8. A plaintiff is not

required to correctly explain the meaning of the law and the extent to which it creates liability for any defendant in order to maintain compliance with Civ.R. 8. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 1994-Ohio-99, 639 N.E.2d 771.

{¶19} Gomez has included in his pleadings an assertion that the Appellees had various duties pursuant to R.C. 2151.421. The amended complaint asserts that the Appellees breached these duties, among other reasons, by acting in a malicious, reckless or wanton manner during the investigation of Gomez's child abuse report. The amended complaint also alleges that Appellee's actions "unreasonably compromis[ed] the safety and protection of [Gomez's] children from abuse," and "as a result, both [Gomez's] children are being abused by their step-father without redress up to date." (Amended Complaint, ¶40, 53). Thus, Gomez's pleadings include the allegation that Appellees had a duty, that they breached that duty, and that the children were injured as a result. These allegations are enough to satisfy Ohio's notice pleading for a negligence claim. See *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. Thus Gomez has adequately pleaded a cause of action.

{¶20} Gomez raised several issues in his amended complaint, all of which must be reviewed for their sufficiency: (1) Whether any applicable party could be liable under Section 1983, Title 42, U.S. Code for limiting Gomez's visitation of his children; (2) Whether any of the named parties could be liable for failure to report child abuse under R.C. 2151.421(A); (3) Whether any of the government subdivisions could be liable for failure to investigate child abuse under R.C. 2151.421(F) and the immunity exception for express provisions of liability under R.C. 2744.02(B)(5); and, (4) Whether any of the named employees, as individuals, could be liable for failure to investigate child abuse under R.C. 2151.421(F) due to express statutory liability, acting outside the scope of employment, or if the failure to investigate is with malicious purpose, bad faith, or in a wanton or reckless manner, pursuant to R.C. 2744.03(A)(6). We will review each of these issues in turn.

### Section 1983

{¶21} First, an action under Section 1983 alleges that the claimant had been

deprived of a Constitutional right by a person acting under color of law. The pertinent part of Section 1983, Title 42, U.S. Code states:

**{¶22}** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."

**{¶23}** Federal courts do not have exclusive jurisdiction to remedy this deprivation. *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45. Therefore, it is possible for Gomez to raise such a claim in the court below. To survive a Civ.R. 12(B)(6) motion, Gomez's complaint must include two elements: (1) the conduct must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of a fundamental federal right. *1946 St. Clair Corp. v. City of Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456. If either one of these elements is not present, Gomez's claim must fail.

**{¶24}** Gomez's complaint asserts that Harding of Children Services asked Gomez to complete a psychological evaluation, and that Judge Nau limited Gomez's visitation rights to his children so that he was only able to have supervised visits for a temporary period. Gomez stated in his complaint that these actions violated his and his children's Fourth and Fourteenth Amendment rights.

**{¶25}** The Fourth Amendment, which protects individuals from unreasonable searches and seizures, does not have any applicability to Gomez's claim. Gomez is probably asserting a violation of his fundamental right to the care, custody and management of his children under the Fourteenth Amendment. *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49; *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.

**{¶26}** Gomez's complaint does not indicate what misfeasance Harding carried out apart from asking Gomez to take a psychological test. The making of such a request does not constitute a deprivation of Gomez's fundamental right to the custody and care of

his children. The only other action identifiable as an alleged Constitutional deprivation is the child visitation order, which limited Gomez to having supervised visits with his children for some temporary period of time. Gomez does not find fault with any previous order designating him the non-residential parent, or previous orders or agreements regarding Gomez's visitation schedule with his children. The only event mentioned in the complaint is a change from what we presume to be a standard visitation schedule to one carried out under the supervision of Children Services. Such an order does not terminate Gomez's previous rights to visit his children, and only adds the requirement that they be supervised. The presence of Children Services during Gomez's visitation with his children did not deprive him of the right to care for or manage his children.

{¶27} Gomez pleaded no set of facts indicating that any of the Appellees had deprived Gomez of a fundamental federal right, thus a Civ.R. 12(B)(6) dismissal was appropriate for this claim.

### R.C. 2151.421(A)

{¶28} Second, Gomez's complaint alleges that Children Services and its employees were liable for failure to report the abuse of Gomez's child. Gomez appears to be arguing that Children Services was obligated to report Gomez's report to the police.

{¶29} Pursuant to R.C. 2151.421(A)(1)(a), certain individuals who are "acting in an official or professional capacity and know, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child" has or will be abused or neglected, must immediately report such knowledge or reasonable suspicion to "the public children services agency or a municipal or county peace officer * * *." Applicable individuals who violate this requirement are expressly "liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made." R.C. 2151.421(M).

{¶30} Before entering an analysis of the Political Subdivision Tort Liability Act, we note that it is well established that a "children services agency and its employees, upon receipt of a case referral, do not have a duty under R.C. 2151.421(A)(1)(a) to cross-report the case to a law-enforcement agency and are immune from liability for failing to do so.

*O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at paragraph one of the syllabus. The Ohio Supreme Court also explained that a children services agency's duty to investigate a report of child abuse pursuant to R.C. 2151.421(F) also does not create an automatic duty to cross-report the case to the police. Id. at ¶56.

{¶31} Gomez's argument regarding the reporting aspect of R.C. 2151.421(A) fails as a matter of law. A Civ.R. 12(B)(6) dismissal was therefore appropriate for this claim. However, although the express liability of R.C. 2151.421(A) & (M) is not involved, the duty to investigate pursuant to R.C. 2151.421(F) may eventually obligate Children Services and its employees to report to the police, as discussed below.

**Governmental Actors and R.C. 2151.421(F) and R.C. 2744.02(B)(5)**

{¶32} Third, Gomez's complaint alleges that Children Services was liable for failure to investigate the abuse of Gomez's child. Gomez's complaint and arguments before the trial court seem to concede that the governmental actors fulfilled their initial duty of responding to the report of child abuse. However, Gomez contended that the governmental actors blatantly failed to adequately conduct the investigation, to the extent that they did not perform their statutory duties. For clarity of analysis, the duties and liability of the government subdivisions will be addressed separately from those of the individual employees.

{¶33} The applicable section of R.C. 2151.421(F)(1) states:

{¶34} "[T]he public children services agency shall investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected or believed to have occurred * * * that is referred to it under this section to determine the circumstances surrounding the injuries, abuse, or neglect or the threat of injury, abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible. * * * The public children services agency shall submit a report of its investigation, in writing, to the law enforcement agency."

{¶35} In order to determine an exception to the immunity from liability of Children Services pursuant to the Political Subdivision Tort Liability Act, a three-tiered analysis of R.C. Chapter 2744 is required:

{¶36} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *

{¶37} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *

{¶38} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶7-9 (internal citations omitted).

{¶39} Gomez has conceded that Children Services is a political subdivision and is thus generally immune from liability. As for the second tier of the analysis, the only exception that potentially applies to Children Services in this case is R.C. 2744.02(B)(5), which allows liability "when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code." However, the Ohio Supreme Court has expressly held that "[w]ithin the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 does not expressly impose liability for failure to investigate reports of child abuse." *Marshall v. Montgomery Cty. Children Serv. Bd.*, 92 Ohio St.3d 348, 2001-Ohio-209, 750 N.E.2d 549, at syllabus. Thus the exception to immunity under R.C. 2744.02(B)(5) does not apply to Children Services or other named government subdivisions for the purposes of Gomez's claims.

{¶40} Because none of the exceptions pursuant to R.C. 2744.02(B) apply, the defenses and immunities pursuant to R.C. 2744.03 under the third tier of the analysis do not apply. We infer from Gomez's brief that he is contending that the liability of Children Services is renewed due to the actions of the employees, pursuant to R.C. 2744.03(A)(6) (discussed infra). However, the acts of individual employees under R.C. 2744.03(A)(6) re-establish a government subdivision's immunity to liability, and cannot be used to

establish liability. *Wright v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. No. 08-MA-77, 2009-Ohio-561, at ¶25. Thus the liability of Children Services would not be re-established, for example, due to an employee's reckless failure to adequately conduct an investigation of reported child abuse. *O'Toole*, supra, at ¶71.

**{¶41}** Gomez's complaint did not establish that any of the exceptions to political subdivision immunity, enumerated in R.C. 2744.02(B), applied to any subdivisions named. Gomez's claims against Children Services and the other government subdivisions fail as a matter of law. A Civ.R. 12(B)(6) dismissal was therefore appropriate for this portion of Gomez's complaint.

### Employee Actors and R.C. 2151.421(F) and R.C. 2744.03(A)(6)

**{¶42}** Fourth, Gomez's complaint alleges that certain individual employees of Children Services were not immune from liability for failure to investigate a report of child abuse, pursuant to R.C. 2151.421(F), and R.C. 2744.03(A)(6).

**{¶43}** The three-tiered analysis of the Political Subdivision Tort Liability Act for a political subdivision does not apply in the determination of whether an individual employee of a political subdivision could be liable for harm caused to Gomez's children. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, at ¶17. Instead, an employee of a political subdivision is generally immune from liability, unless:

**{¶44}** "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

**{¶45}** "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

**{¶46}** "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6).

**{¶47}** Gomez's complaint contends that all three of these exceptions apply to the employees responsible for investigating his report of child abuse. The primary contention within Gomez's complaint is that his children continue to be abused because various employees breached their duties pursuant to R.C. 2151.421(F) by conducting the child abuse investigation with malicious purpose, in bad faith, or in a wanton or reckless

manner. In this case, Gomez did not state a cause of action against the individual employees which would lift immunity pursuant to the exceptions in subparts (a) and (c) of R.C. 2744.03(A)(6). However, for Civ.R. 12(B)(6) purposes, Gomez has pleaded facts, which must be taken as true, that indicate an exception to liability under subpart (b).

{¶48} As for employee liability pursuant to an express statutory imposition of liability, the Ohio Supreme Court's holding that "[w]ithin the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 does not expressly impose liability for failure to investigate reports of child abuse," applies both to government entities and to individual employees. *Marshall*, supra. Thus Gomez's complaint against the individual employees related to R.C. 2744.03(A)(6)(c) fails as a matter of law.

{¶49} As for employee liability pursuant to an act or omission outside the scope of employment, the only specific reference to R.C. 2744.03(A)(6)(a) in Gomez's complaint appears to relate to the failure of Children Services to provide Gomez with a report of their findings, which is not included in Children Services or its employees' duties pursuant to the investigatory duties of R.C. 2151.421(F). Thus, immunity cannot be lifted pursuant to R.C. 2744.03(A)(6)(a). Gomez's remaining claims regarding this section are more appropriately reviewed in a R.C. 2744.03(A)(6)(b) analysis, because the only other actions outside the scope of employment that Gomez has alleged were actions involving bad faith, maliciousness, wantonness, or recklessness in the course of conducting the investigation into the allegations of abuse.

{¶50} As for employee liability pursuant to an act or omission with malicious purpose, in bad faith, or in a wanton or reckless manner, the Ohio Supreme Court has noted that it is possible to bring a claim against an individual employee for reckless failure to perform her duties under R.C. 2151.421, and that the employee's general immunity from liability may be removed by R.C. 2744.03(A)(6)(b). *O'Toole*, supra, at ¶72.

{¶51} In *O'Toole*, the Ohio Supreme Court addressed, among other issues, whether an employee of a public children services agency was entitled to immunity in the case of a child who died from abuse after having been reported to the agency. The opinion specifically examined whether an employee of the agency could be held liable for

his alleged reckless conduct during his investigation of the child abuse report.  Id. at ¶70-92.  The Ohio Supreme Court explained as follows:

{¶52}  "Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk. * * *

{¶53}  "Recklessness, therefore, necessarily requires something more than mere negligence. * * * In fact, 'the actor must be conscious that his conduct will in all probability result in injury.' * * *

{¶54}  "Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity."

{¶55}  Id. at ¶73-75 (internal citations omitted).

{¶56}  *O'Toole* concluded that the facts alleged by the complainant regarding the employee's recklessness were not sufficient to withstand a motion for summary judgment. Id. at ¶92.  Although the claims in *O'Toole* were not supportable in the context of summary judgment, the Ohio Supreme Court's analysis indicates that the recklessness claim was, at a minimum, theoretically possible under the law.  Thus, a tort action which includes a claim that a political subdivision employee engaged in reckless conduct during his investigation of the child abuse report is a claim upon which relief could be granted.

{¶57}  The discussion in *O'Toole* indicates that even if an investigation is being or has been conducted, if an employee breaches his duties pursuant to R.C. 2151.421(F) by acting recklessly within or in response to that investigation, claims may still be made against the employee for subsequently resulting injury.  *O'Toole* at ¶72-91, discussing *Grimm v. Summit Cty. Children Servs. Bd.,* 9th Dist. No. 22702, 2006-Ohio-2411, *C.S. Hahn v. Wayne Cty. Children Servs.* (May 9, 2001), 9th Dist. No. 00CA0029, and *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 602 N.E.2d 363. Although *O'Toole* discussed these three cases for the purpose of demonstrating when a claim of recklessness may not survive a summary judgment motion, such discussion indicates that an examination of the facts, which would require examination outside the

pleadings, is necessary to determine such a claim.

{¶58} Here, we must examine the same issue as that in *O'Toole* within the context of Civ.R. 12(B)(6) rather than summary judgment. Minimal notice pleading is generally all that is required to survive a motion to dismiss under Civ.R. 12(B)(6). *Cincinnati v. Beretta U.S.A. Corp*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, at ¶29. Gomez was not required to prove his case at this stage of the proceedings, and the trial court was obligated to construe all of the material factual allegations in Gomez's complaint as true. Although Gomez will have to meet the high threshold regarding recklessness as explained in *O'Toole* to survive a motion for summary judgment, his pleadings were technically sufficient to survive a Civ.R. 12(B)(6) motion.

{¶59} Appellees argue that Gomez's allegations of recklessness constitute an unsupported conclusion and are mere "magic words" which do not constitute a valid claim. However, Gomez's complaint claims that Children Services employee Kelly Clark witnessed the child's injuries and heard the child's explicit reports that the step-father beat her with a belt. Gomez's complaint alleges that Clark then intentionally created a fabricated story, stating that the child claimed that a caseworker injured her, all for the purpose of undermining the child's credibility. The complaint also claims that Clark and other Children Services workers sent a letter intimidating Gomez for having reported the child abuse. Gomez alleged in his complaint that his children are still subject to physical abuse as a result of the employees' reckless failure. Thus the facts contained within Gomez's complaint put the defendants on notice of his claims that the Children Services employees had duties pursuant to R.C. 2151.421(F), that they breached these duties by failing to appropriately investigate his report of child abuse, that his children continue to be abused by their stepfather as a result, and that governmental tort liability immunity does not apply because the employees' failings were committed with malicious purpose, in bad faith, or in a wanton or reckless manner. These claims, taken to be true, satisfy Ohio's notice pleading requirements for the claim that Children Services employees were liable for injury to the Gomez children upon having recklessly failed to properly conduct an investigation as required under R.C. 2151.421(F).

{¶60} As Gomez points out in his brief, the trial court incorrectly stated in its judgment entry that witnesses were sworn and testimony was given during the final oral hearing regarding Appellees' motion to dismiss. This inaccuracy, along with the articulation in the judgment entry of the trial court's disbelief of Gomez's factual contentions regarding government employee recklessness, indicates that the trial court erroneously considered issues of credibility or weight of facts, which is not appropriate in a Civ.R. 12(B)(6) decision.

{¶61} Given the foregoing, a claim for a government employee's reckless failure to adequately investigate a report of child abuse is legally feasible. The trial court's dismissal was erroneous for this portion of Gomez's complaint.

### Conclusion

{¶62} Gomez's sole assignment of error is partially meritorious. This conclusion should not be construed to imply any opinion regarding the strength or weakness of Gomez's case beyond the very limited context of a Civ.R. 12(B)(6) motion. The trial court was correct in concluding that Gomez failed to state a claim upon which relief could be granted for most of his claims. However, the trial court erred in granting Appellees' Civ.R. 12(B)(6) motion for the specific claim related to the reckless conduct of individual employees of Children Services and subsequent alleged injury to the children as a result. Gomez's pleadings were technically sufficient to survive a Civ.R. 12(B)(6) motion.

{¶63} Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Vukovich, P.J., concurs.

Waite, J., concurring in part and dissenting in part with
        concurring in part and dissenting in part opinion.

Waite, J., concurring in part; dissenting in part:

Because I do not read Appellants' amended complaint as stating a claim for negligence, I would affirm the trial court's dismissal of Appellants' R.C. 2151.421(F) cause of action.

Therefore, I must respectfully dissent as to that portion of the majority's decision.

While it is true that pro se complaints are to be liberally construed, in *Gomez v. Dyer*, 7th Dist. No. 07 NO 342, 2008-Ohio-1523, we stated that, "[p]ro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." Id. at ¶46, citing *State v. Gordon*, 10th Dist. No. 03AP-490, 2003-Ohio-6558, ¶14.

Here, the majority goes to some lengths to fashion a negligence claim from Appellants' allegations in the amended complaint. As I read the amended complaint, Appellants rely exclusively upon an alleged violation of R.C. 2151.421(F) to state a claim. However, under this section no private cause of action exists.

In determining whether statutes create a private cause of action for enforcement, the Ohio Supreme Court has held that a "statutory policy" may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio General Assembly. *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 249, 348 N.E.2d 144, 147. Ohio courts apply a three-part test adopted from *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, to determine when a private cause of

action arises by implication under a particular statute. The court must consider: (1) whether the plaintiffs are in a class for whose special benefit the statute was enacted; (2) legislative intent, explicit or implicit, either to create or deny a private cause of action; and (3) the underlying purpose of the legislative scheme to infer this remedy for the plaintiffs. *Strack v. Westfield Cos.* (1986), 33 Ohio App.3d 336, 337, 515 N.E.2d 1005, 1006-1007; *Elwert v. Pilot Life Ins. Co.* (1991), 77 Ohio App.3d 529, 542, 602 N.E.2d 1219, 1228.

R.C. 2151.421 does create a private right of action for failure to report child abuse. R.C. 2151.421(M) reads, in pertinent part, "[w]hoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made." However, the statute clearly does not create a private right of action for failure to investigate reports of child abuse. Therefore, no matter how their allegations are framed, Appellants have failed to state a claim upon which relief can be granted under R.C. 2151.421(F).

Accordingly, in addition to affirming the trial court's decision in all other respects, I would affirm the trial court's dismissal of Appellants' R.C. 2151.421(F) claims against the county employees because R.C. 2151.421(F) does not create a private right of action.